UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 5/15/2020

JUDON MCLEOD,

                Plaintiff,

         v.

CORRECTION OFFICER WILLIAMS, *Shield Number #14366*,

                Defendant.

No. 18-CV-115 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Judon McLeod, proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants Deputy Warden Hellen Smith, Commissioner Cynthia Brann, and Correction Officer Janet Williams, alleging that Defendants violated his constitutional rights while he was detained at the Anna M. Kross Center on Rikers Island by depriving him of the ability to attend the Jumu'ah service on November 10, 2017.  Now before the Court is Defendant Williams' motion for summary judgment.[1]  For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND[2]

On November 10, 2017, Plaintiff was detained at the Anna M. Kross Center ("AMKC"), a New

---

[1] The Court dismissed Plaintiff's claims against Defendants Smith and Brann on February 11, 2019.  *See* Dkt. 15.

[2] The following facts are uncontroverted unless otherwise noted, and are drawn from the parties submissions in connection with the pending motion, including Defendant's Rule 56.1 Statement, Dkt. 47 ("Def. 56.1"), Plaintiff's Affirmation in Opposition to Defendant's Motion for Summary Judgment, Dkt. 49 ("Pl. Opp'n"), the exhibits attached to Defendant's motion, *see* Kalmbach Decl., Dkt. 46, and the exhibits attached to Plaintiff's opposition, *see* Pl. Opp'n at ECF pages 9-40.  Where facts in Defendant's Rule 56.1 Statement are supported by testimonial or documentary evidence and denied only by way of a conclusory statement, without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true.  *See* S.D.N.Y. Local Rule 56. l(c)-(d); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2005) (*pro se* litigants are not exempt from complying with the local rules); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."); *see also* Dkt. 45-1 (Defendant's Rule 56.2 Notice sent to Plaintiff); Dkt. 45-2 (Defendant's affidavit of service).  In any event, the Court has also conducted its own review of the record before it to make the factual and legal conclusions discussed in this Opinion.  *See Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions.").

York City Department of Correction facility on Rikers Island.  Def. 56.1 ¶ 1.  He was housed specifically in "housing area W19U" of the facility.  Def. 56.1 ¶ 2.  Plaintiff identifies as Muslim and, as part of his Muslim faith, attends a religious service known as "Jumu'ah" on Fridays.  *See* Def. 56.1 ¶ 4; Pl. Opp'n ¶ 1(iv).  Jumu'ah services are usually held between 1:00 p.m. and 1:20 p.m. on Fridays.  *See* Kalmbach Decl. Ex. A ("Pl. Tr.") at 32.

On November 10, 2017, AMKC, including housing area W19U, was "placed on lockdown from 8:00 a.m. until 3:00 p.m."  Def. 56.1 ¶ 3.  During a lockdown, inmates are "generally not allowed to move around the facility."  Def. 56.1 ¶ 5.  Plaintiff testified that he does not recall ever attending the Jumu'ah service while the facility was on lockdown.  *See id.*; *see also* Pl. Tr. at 32 ("If the facility is on lockdown you cannot leave unless it's for medical purposes only[.]").  Nonetheless, despite the lockdown at AMKC, a Jumu'ah service was held on November 10, 2017.  *See* Def. 56.1 ¶ 7; Pl. Opp'n ¶ 3.  At 1:20 p.m., "all housing areas in AMKC were notified that Jumu'ah would take place during the lockdown."  Def. 56.1 ¶ 6; *see also* Pl. Opp'n ¶ 1(v) (stating that the "Juma Services Logbook" entries "clearly show[] that all housing units, including W19U[,] at AKMC were notified to prepare for Juma Services."); Pl. Opp'n ¶ 3 ("There is no factual dispute that despite the lockdown the Tour Commander authorized Juma Services on November 10, 2017 and that all housing units were notified well in advance to prepare inmates for the services.").

Plaintiff did not attend the Jumu'ah service on November 10, 2017.  Def. 56.1 ¶ 7.  Plaintiff asserts that no other inmates from his housing unit, W19U, attended the service that day either, even though there are "at least eight (8) men who regularly attended the weekly Jumu'ah Services from the housing unit."  Pl. Opp'n ¶ 3.  The record is not entirely clear as to why Plaintiff missed the Jumu'ah service on November 10, 2017.  On the one hand, Plaintiff contends that "he did not hear an announcement regarding Jumu'ah on November 10, 2017."  Def. 56.1 ¶ 8; *see also* Pl. Tr. at 34.  He claims that, specifically, Defendant Williams did not announce the service, and therefore denied him and

other Muslim inmates from W19U "the opportunity to attend services" that day. *See* Pl. Opp'n ¶ 4.[3]  On

the other hand, however, Plaintiff testified at his deposition that he had asked a correction officer—

during the lockdown and prior to the Jumu'ah service—if he could attend it, and was told that he could

not because the facility was on lockdown. *See* Def. 56.1 ¶¶ 9-10; Pl. Tr. at 36-37.

Plaintiff filed a grievance regarding his alleged inability to attend the November 10, 2017 service.

*See* Def. 56.1 ¶ 12; *see also* Kalmbach Decl. Ex. D (Nov. 10, 2017 Grievance).  He did not, however,

attend a hearing or receive any type of decision as to that grievance.  *See* Def. 56.1 ¶¶ 13-14.  Plaintiff

subsequently filed a second grievance, dated November 21, 2017, complaining that his first grievance

was not timely answered.  *See* Def. 56.1 ¶ 16; Pl. Opp'n ¶ 6; *see also* Kalmbach Decl. Ex. E (Nov. 21,

2017 Grievance).  He maintains that he did not receive a response to his grievance prior to being

"transferred to State Custody in January 2018." Pl. Opp'n ¶¶ 2(ix), 2(xi).

Plaintiff filed the instant action on January 5, 2018.  *See* Dkt 2.  On July 18, 2018, Chief Judge

McMahon dismissed Plaintiff's claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See* Dkt.

7.  Plaintiff appealed that order on August 13, 2018, *see* Dkt. 9, and on December 21, 2018, the Second

Circuit Court of Appeals vacated the judgment and remanded to the district court for further proceedings,

*see* Dkt. 10.[4]  On February 11, 2019, Plaintiff's claims against Defendants Smith and Brann were

dismissed for failure to allege their personal involvement in the events underlying his claims, *see* Dkt.

15, and on December 12, 2019, following discovery, Defendant Williams moved for summary judgment,

*see* Dkt. 45.  Plaintiff opposed the motion on January 6, 2020, *see* Dkt. 49, and Defendant replied on

---

[3] Plaintiff also contends that housing area W19U was "one of two distinct and separate sides of the housing units under the supervision of Post #8 at the AMKC," and that "[e]ach housing unit side had its own logbook in which Correction Officers on Post #8 entered information for that particular side of the housing unit." Pl. Opp'n ¶ 2(i).  He asserts that "[e]ntries regarding Juma'ah services are to be logged in the housing unit logbooks and the Jumu'ah Services logbook." Pl. Opp'n ¶ 2(ii).  He further asserts that the "logbook entries for November 10, 2017 show that on the [sic] Juma services were called for one side of the housing unit but not the other side," and that the "logbook entry" for the side of the housing unit under Defendant Williams' "control and supervision" shows "no entry for Jumu'ah Services." Pl. Opp'n ¶ 2(viii).

[4] The Circuit's Mandate was issued on January 25, 2019. *See* Dkt. 11.

February 6, 2020, *see* Dkt. 50.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 authorizes a court to grant summary judgment if the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citations omitted). To survive summary judgment, "a plaintiff must provide more than conclusory allegations . . . and show more than some metaphysical doubt as to the material facts." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106, 101 (2d Cir. 2010) (internal quotation marks and citation omitted). In deciding such a motion, however, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If it satisfies this burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id*. "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *CILP Assocs., L.P. v. Price Waterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation and alteration omitted).

Moreover, "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam) (citation and alteration omitted). Thus, "[c]ourts read the

pleadings, briefs, and opposition papers of pro se litigants 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Rivera v. Goulart*, No. 15-CV-2197 (VSB), 2018 WL 4609106, at *3 (S.D.N.Y. Sept. 25, 2018) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). "Nevertheless, proceeding *pro se* does not otherwise relieve a plaintiff from the usual requirements of summary judgment, . . . and a court cannot credit a plaintiff's merely speculative or conclusory assertions." *Hamilton v. Countant*, No. 13-CV-669 (RA), 2016 WL 881126, at *3 (S.D.N.Y. Mar. 1, 2016) (alterations, internal quotation marks, and citation omitted); *see also Powell v. City of New York*, No. 14-CV-9937 (PAC) (BCM), 2016 WL 4159897, at *3 (S.D.N.Y. July 14, 2016), *report and recommendation adopted,* 2016 WL 4147203 (S.D.N.Y. Aug. 3, 2016) ("[B]ald assertions, unsupported by evidence, will not overcome a motion for summary judgment, regardless of whether the party opposing summary judgment is counseled or pro se.") (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff asserts that Defendant Williams violated his right to free expression of religion by preventing him from attending the Jumu'ah service held on November 10, 2017. Construing his complaint and opposition papers liberally, Plaintiff's claims arise under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003), including the "constitutional right to participate in congregate religious services," *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993). A prisoner's First Amendment rights, however, must be balanced against "the interests of prison officials charged with complex duties arising from the administration of the penal system." *Ford*, 352 F.3d at 588. The Second Circuit therefore "judge[s] prisoners' free exercise claims under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Brandon v. Kinter*, 938 F.3d 21, 32 (2d

Cir. 2019) (quoting *Ford*, 352 F.3d at 588) (internal quotation marks omitted).

A claim under the Free Exercise Clause—made actionable against state officials by 42 U.S.C. § 1983—requires that a plaintiff show (1) "that he has a sincerely held religious belief," (2) "that it was substantially burdened," and (3) "that [the defendant's] conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 F. App'x 52, 55 (2d Cir. 2015) (citing *Holland v. Goord*, 758 F.3d 215, 220-23 (2d Cir. 2014)). As this Court has previously explained, *see Hamilton*, 2016 WL 881126, at *3, the Second Circuit has not decided whether the substantial burden test continues to apply, but has nonetheless required that a prisoner "show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *See Brandon*, 938 F.3d at 32 (quoting *Holland*, 758 F.3d at 220).[5] Absent any contrary instruction from the Second Circuit, and because neither party argues that the substantial burden test is inapplicable to Plaintiff's claims here, the Court will proceed—as other courts in the district repeatedly have—by assuming the substantial burden requirement continues to apply. *See Williams*, 639 F. App'x at 56; *see also, e.g.*, *Lombardo v. Freebern*, No. 16-cv-7146 (KMK), 2018 WL 1627274, at *8 (S.D.N.Y. Mar. 30, 2018) ("To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs.") (citation omitted); *Washington v. Chaboty*, No. 09 Civ. 9199 (PGG), 2015 WL 1439348, at *9 n.12 (S.D.N.Y. Mar. 30, 2015) ("Similarly here, because [plaintiff] has not argued that the substantial burden test is

---

[5] In *Brandon*, for instance, the Second Circuit noted that "[w]henever the question has arisen in our Circuit, the panel has avoided answering it by noting either that the parties did not brief the issue or that the requirement, even if applied, would have been satisfied," and then assumed, without deciding, that plaintiff's "free exercise claim is subject to the substantial burden requirement." 938 F.3d at 32 n.7. Similarly, in *Williams v. Does*, 639 F. App'x 55 (2d Cir. 2016), the Circuit stated that it has "not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs," but concluded that it was "not necessary to resolve [that] issue" since the plaintiff "[did] not argue that the substantial burden threshold requirement is inapplicable and instead argue[d] that he met the requirement." *Id.* at 56; *see also Holland*, 758 F.3d at 220 ("It has not been decided in this Circuit whether . . . a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.") (internal quotation marks and citation omitted); *Smith v. Wildermuth*, No. 11-cv-0241 (TWD), 2017 WL 1379368, at *4 (N.D.N.Y. Apr. 14, 2017) ("Although the Second Circuit has applied the 'substantial burden' test in its most recent prison free exercise cases, it has done so while explicitly refusing to adopt or endorse the test.").

inapplicable, this Court has assumed that it applies."); *Rossi v. Fishcer*, No. 13-cv-3167 (PKC) (DF), 2015 WL 769551, at *6 n.8 (S.D.N.Y. Feb. 24, 2015) ("[T]he Second Circuit and judges in this district have continued to require [] a threshold showing [of a substantial burden], particularly in cases where the parties have not argued otherwise."); *Vann v. Fischer*, No. 11 Civ. 1958 (KPF), 2014 WL 4188077, at *8 n.14 (S.D.N.Y. Aug. 25, 2014) ("It is customary in this District, absent any contrary instruction from the Second Circuit, to assume that the substantial burden test survives.").

RLUIPA similarly provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-l(a).  Once "a plaintiff produces prima facie evidence to support a claim alleging a violation" of RLUIPA, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice] substantially burdens the plaintiff's exercise of religion."  42 U.S.C. § 2000cc-2(b); *see also Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018) ("In practice, RLUIPA claims are evaluated under a burden-shifting framework whereby a plaintiff must first demonstrate that the state has imposed a substantial burden on the exercise of [his] religion; the burden then shifts to the state to demonstrate 'that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest.'") (quoting *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010)).

Although claims under the Free Exercise Clause and RLUIPA "proceed[] under a slightly different framework," *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006), "the required 'substantial burden' is identical under both provisions."  *Hamilton*, 2016 WL 881126, at *4; *see also Lombardo*, 2018 WL 1627274, at *14 ("Whether a prisoner sufficiently pleads a substantial burden on a sincerely held religious belief under RLUIPA involves the same threshold analysis as under the First

Amendment."). A substantial burden exists "where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Williams*, 639 F. App'x at 56-57 (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)); *accord Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (applying the same substantial burden definition to RLUIPA). "The relevant question in determining whether [a plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the plaintiff's religious] practice." *Ford*, 352 F.3d at 593-94. Moreover, "[t]he government's interference with plaintiff's exercise of religion must be 'more than an inconvenience,' and must rise to the level of 'burden[ing] a belief central to plaintiff's religious doctrine.'" *Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061 (KAM) (LB), 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) (citation omitted). If the plaintiff satisfies the burden of showing that "the disputed conduct substantially burden[ed] his sincerely held religious beliefs," then the defendant "bear[s] the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin*, 467 F.3d at 274-75; *see also Brandon*, 938 F.3d at 32 ("If the prisoner satisfies these threshold requirements, a defendant can still avoid liability by showing that his or her conduct is 'reasonably related to legitimate penological interests.'") (quoting *Holland*, 758 F.3d at 222). Nevertheless, the "burden remains with the prisoner to show that these articulated [penological] concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (alterations and internal quotation marks omitted).

Defendant does not contest that Plaintiff's religious beliefs, in connection with his Muslim faith, are sincerely held, and it is undisputed that Plaintiff's claims before this Court arise entirely from the fact that he missed one Jumu'ah service. Defendant, however, asserts that she is entitled to summary judgment because missing one religious service does not substantially burdened Plaintiff's sincerely held religious beliefs. The Court agrees.

While "establishing a substantial burden is not a particularly onerous task," *Brandon*, 938 F.3d

8

Case 1:18-cv-00115-RA-JLC   Document 52   Filed 05/15/20   Page 9 of 14

at 32 (internal quotation marks and citation omitted), courts in the Second Circuit have repeatedly held that "[a]s a matter of law, missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion." *See Jones v. Malin*, No. 15-CV-5381 (VB), 2017 WL 985943, at *3 (S.D.N.Y. Mar. 13, 2017) (quoting *Gill v. DeFrank*, No. 98 Civ. 7851 (NRB), 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000), *aff'd,* 8 F. App'x 35 (2d Cir. 2001)); *Lombardo*, 2018 WL 1627274, at *12 (collecting cases).[6]  Thus, despite Plaintiff's contention that "[t]he question of whether or not the missing of [one Jumu'ah service] represents a substantial burden" is "a matter of fact to be determined by the trier-of-fact and [] not . . . on a motion for summary judgment," *see* Pl. Opp'n ¶ 12, courts in this Circuit have routinely granted summary judgment to defendants where the alleged violation involves a plaintiff missing only one or two religious services. *See, e.g.*, *Hanton v. Mathiau*, 29 F. App'x 772, 773-74 (2d Cir. 2002) (affirming summary judgment where district court held that "being unable to attend . . . religious services on two days . . . did not violate [plaintiff's] First Amendment right to practice

---

[6] *See also, e.g.*, *Smith*, 2017 WL 1379368, at *5 ("[C]ourts in the Second Circuit have routinely held that missing one religious prayer or service does not constitute a substantial burden necessary to sustain a First Amendment infringement claim."); *Powell*, 2016 WL 4159897, at *5 ("It is well-settled in this Circuit that missing two weekly religious services does not substantially burden a prisoner's right to freely exercise his religion."); *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 588 (S.D.N.Y. 2015) ("In the Second Circuit, courts have held that preclusion from attending two religious services is not, without more, a 'substantial burden' on a plaintiff's free exercise of religion."); *Blalock v. Jacobsen*, No. 13-CV-8332 (JMF), 2014 WL 5324326, at *7 (S.D.N.Y. Oct. 20, 2014) (dismissing claims asserting violation of First Amendment's Free Exercise Clause where plaintiff alleged that he "was twice unable to attend Muslim religious services" because "the conduct [plaintiff] challenges—the denial of two religious services—does not substantially burden an inmate's right to religious observation"); *Shapiro*, 2014 WL 1276479, at *11 ("[N]ot permitting a prisoner to attend two religious services is a *de minimis*, or insubstantial, burden on an inmate's ability to freely exercise his religion.") (internal quotation marks and citation omitted); *Hankins v. NYS Dep't of Corr. Servs.*, No. 07-CV-0408 (FJS/GHL), 2008 WL 2019655, at *5 (N.D.N.Y. Mar. 10, 2008) ("Courts from the Second Circuit have *repeatedly* found that an allegation that prison officials caused a prisoner to miss one religious service fails to state an actionable claim under the First Amendment."); *Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 142 (S.D.N.Y. 2002) (dismissing claims where plaintiff alleged that correction officer "prevented him, on one occasion, from attending a religious service" because "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion") (citation omitted).  In fact, "district courts in this Circuit have specifically held that causing a prisoner to miss one Jumu'ah service fails to state an actionable claim under the First Amendment." *See Hankins*, 2008 WL 2019655, at *5 & n.43 (collecting cases); *see also, e.g.*, *Jones*, 2017 WL 985943, at *3 (holding that plaintiff had not plausibly alleged that "defendants 'substantially burdened' his right to free exercise by preventing him from attending Shi'a Jumu'ah prayer services on Friday, November 29, 2013"); *Scott v. Uhler*, No. 16-CV-403 (TJM/CFH), 2017 WL 9511167, at *4 (N.D.N.Y. Feb. 8, 2017), *report and recommendation adopted,* 2017 WL 1034792 (N.D.N.Y. Mar. 17, 2017) (holding that plaintiffs failed to allege a substantial burden because "the facts do not suggest that defendants' refusal to allow plaintiffs to attend Jumm'ah services, for one day, violated plaintiffs' constitutional rights").

his religion"); *Powell*, 2016 WL 4159897, at *1, 6 (granting summary judgment where plaintiff was "denied the opportunity to attend Friday Muslim services" during the period of November 7-19, 2014 because "the conduct complained of did not substantially burden plaintiffs [sic] religious practice").[7]

Plaintiff asserts that he regularly attends Jumu'ah services, that doing so is "a required part of practicing [his] faith," and that "even the missing of one (1) day of worship is a violation of the core tenets of the faith as practiced by Muslims." *See* Pl. Opp'n ¶¶ 4, 10. But in light of the undisputed facts and the weight of the case law in this Circuit, the Court concludes that there is no genuine dispute of fact as to whether his rights were substantially burdened. Indeed, Plaintiff has not alleged—let alone set forth any evidence to establish—that he was denied the ability to attend any other services or participate in any other aspects of his religion, or that this one incident was part of a systematic problem or policy of denying religious services at AMKC. He has thus failed to establish that his rights under the First Amendment were substantially burdened. And, "[b]ecause the 'substantial burden' test is the same under RLUIPA as under the Free Exercise Clause, evidence that [Plaintiff] was unable to attend [one Jumu'ah service] does not make out a claim for [a] violation of RLUIPA" either. *See Powell*, 2016 WL 4159897, at *7; *see also, e.g.*, *Smith*, 2010 WL 1330019, at *10 (granting summary judgment on RLUIPA claim because, as discussed in First Amendment analysis, "Plaintiff has failed to establish that the cancellation

---

[7] *See also, e.g.*, *Smith v. Graziano*, No. 08-CV-469 (GLS/RFT), 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010), *report and recommendation adopted,* 2010 WL 1332503 (N.D.N.Y. Apr. 6, 2010) (granting summary judgment where the cancellation of two religious services did not place a substantial burden on inmate's free exercise rights and "appear[ed] to have been isolated occurrences, and not a systematic problem or policy of denying religious services"); *Persad v. Savage*, No. 02-CV-336S(F), 2004 WL 1570286, at *4 (W.D.N.Y. May 25, 2004), *report and recommendation adopted,* 2004 WL 1858140 (W.D.N.Y. Aug. 19, 2004) (granting summary judgment because "[d]espite the cancellation of one (or even two) Juma service, Plaintiffs and other Muslim inmates were free to practice their religion," and "the cancellation of the [one] service was neither a systemic problem nor a [facility] policy violation"); *Troy v. Kuhlmann*, No. 96 Civ. 7190 (BSJ), 1999 WL 825622, at *15 (S.D.N.Y. Oct. 15, 1999) (granting summary judgment where "the undisputed factual record shows that [plaintiff] missed only one religious service because of [the correction officer's] alleged 'neglect'"); *Boomer v. Irvin*, 963 F. Supp. 227, 231 (W.D.N.Y. 1997) (granting summary judgment because "plaintiff's keeplock confinement during September 30, 1994 Jummah services did not substantially burden plaintiff's right to the free exercise of his religion . . . under the free exercise clause of the First Amendment").

Case 1:18-cv-00115-RA-JLC   Document 52   Filed 05/15/20   Page 11 of 14

of two religious services constituted a substantial burden on his ability to exercise his religious beliefs").[8]

Even if Plaintiff had established that missing one Jumu'ah service substantially burdened his religious beliefs, Defendant nonetheless has met her "relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin*, 467 F.3d at 275. Indeed, "a generally applicable policy will not be held to violate a prisoner's right to free exercise of religion if that policy is reasonably related to legitimate penological interests." *Hall v. Ekpe*, 408 F. App'x 385, 387-88 (2d Cir. 2010) (alterations, internal quotation marks, and citation omitted). On November 10, 2017, the facility was on lockdown from 8:00 a.m. until 3:00 p.m. *See* Kalmbach Decl. Ex. B (Nov. 10, 2017 24-Hour Report). The Jumu'ah service is typically held on Fridays between 1:00 p.m. and 1:20 p.m. *See* Pl. Tr. at 32. During a lockdown, inmates are "generally not allowed to move around the facility." *See* Def. 56.1 ¶ 5. Consistent with that policy, Plaintiff testified that he does not recall ever attending a Jumu'ah service while the facility was on lockdown. *See* Pl. Tr. at 32 (explaining that "[i]f the facility is on lockdown," inmates "cannot leave unless it's for medical purposes"). For some reason, however, the "tour commander" at AMKC determined that the Jumu'ah service scheduled for November 10, 2017 could proceed despite the facility-wide lockdown. *See* Def. 56.1 ¶ 6; Kalmbach Decl. Ex. C (Nov. 10, 2017 Logbook Entry).

It is not entirely clear based on the record before the Court whether Plaintiff did not hear the announcement for Jumu'ah services that day, or whether he did hear an announcement but was told that

---

[8] Plaintiff also argues that granting summary judgment to Defendant "is doing exactly what the Second Circuit cautioned against" in *McEachin v. McGuinnis*, 357 F.3d 197 (2d Cir. 2004). *See* Pl. Opp'n ¶ 8. As an initial matter, *McEachin* involved an appeal from a district court's dismissal under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), not an order on summary judgment. *See McEachin*, 357 F.3d at 198. At such an early stage, the Circuit expressed "reluctance" in dismissing the *pro se* complaint prior to the filing of the defendant's answer or fact discovery. Nevertheless, *McEachin* is not a "bar" to granting summary judgment, as Plaintiff suggests. *See* Pl. Opp'n ¶ 12 ("The Second Circuit's caution in *McEachin* . . . should bar summary judgment as 'for it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants [sic] interpretations of these creeds."). This Court does not question the Circuit's "founding principles" that require courts to "resist the dangerous temptation to try to judge the significance of particular devotional obligations to an observant practitioner of faith." *See McEachin*, 357 F.3d at 201. But *McEachin* specifically declined to consider, at that early stage, "whether the plaintiff must demonstrate that the burden on his beliefs was 'substantial' in order to state a constitutional claim." *See id.* at 203. As discussed above, such a showing is required at this stage and has not been met.

11

he could not attend the service due to the lockdown.  On the one hand, Plaintiff testified that he did not

hear the service announced.  *See* Pl. Tr. at 34.  On the other hand, he also testified that he asked one of

the correction officers—during the lockdown and prior to the Jumu'ah service—if he could attend, and

was told that he could not because the facility was on lockdown.  *See id.* at 36-37.  It is of course possible

that Plaintiff both did not hear the announcement and asked a correction officer if he could attend the

service, which is routinely scheduled for Fridays between 1:00 p.m. and 1:20 p.m.  But in either scenario,

the Court's conclusion is unchanged.  Regardless of whether Plaintiff missed the November 10, 2017

Jumu'ah service because he did not hear the announcement or because he was told that he could not

attend during the lockdown, Defendant has met her "relatively limited burden" here.[9]  The evidence

before the Court establishes that Plaintiff's absence from the Jumu'ah service was the result of either the

lockdown itself or confusion from the lockdown.  Temporarily preventing inmates from leaving their

housing units during a facility-wide lockdown has "a valid, rational connection to a legitimate

governmental objective" of keeping Plaintiff, as well as other inmates and staff, safe.  *See Holland*, 758

F.3d at 222; *see also Henry v. Schriro*, No. 10 Civ. 7573 (SAS), 2011 WL 3370394, at *2 (S.D.N.Y.

Aug. 2, 2011) ("As a penological goal, prison security is beyond question legitimate, as prison security

is central to all other corrections goals.") (internal quotation marks and citation omitted); *Shapiro*, 2014

WL 1276479, at *10 (recognizing "prison security and institutional safety goals" as "legitimate

penological interests").  Plaintiff has failed to demonstrate that the lockdown, or the facility's standard

practice of not allowing inmates to move around during a lockdown, s*ee* Def. 56.1 ¶ 5, was irrational.

---

[9] While Plaintiff asserts that Defendant Williams did not announce the service to Plaintiff's housing unit, *see* Pl. Opp'n ¶ 5, the "Juma Services Logbook" indicates that on Friday, November 10, 2017, the "tour commander" determined that the service would proceed, and as of 1:20 p.m., "[a]ll housing area [sic] [were] notified to prepare for service." *See* Kalmbach Decl. Ex. C; Pl. Opp'n Ex. A.  In fact, the "housing unit logbook" entry that Plaintiff attaches as Exhibit G also appears to reflect that, at 2:05 p m., the Jumu'ah service was announced and there were no responses. *See* Pl. Opp'n Ex. G at D000014.  Although Plaintiff states that the second page of that entry does not reference any announcement, and therefore the service was not announced to his side of the unit, *see* Pl. Opp'n ¶ 2(viii); Pl. Opp'n Ex. G at D000010, the various other logbook entries make clear that such records do not always consistently display when Jumu'ah services are announced. *See, e.g.*, Pl. Opp'n ¶ 2(iv) ("Housing unit logbook entries on October 13, 2017 (see Exhibit C) shows no entries for Juma/Muslim Services although services were held on that day.").

*See Salahuddin*, 467 F.3d at 275 (noting that "the burden remains with the prisoner to 'show that these articulated concerns were irrational'") (quoting *Ford*, 352 F.3d at 595) (alterations omitted).

In any event, there is no evidence to suggest that any of Defendant Williams' actions were the result of anything other than—at worst—confusion, miscommunication, and/or inactionable negligence. "[A] prison official must *knowingly* place a substantial burden on a prisoner's religious beliefs to incur liability for damages under RLUIPA or the Constitution." *Hamilton*, 2016 WL 881126, at *4 (collecting cases). As such, "damages claims based solely on the negligent infringement of a prisoner's right to religious freedom are not actionable under either the First Amendment or RLUIPA." *See id.* Courts in this Circuit have thus granted summary judgment where the record demonstrates that the alleged violations of the plaintiff's rights under the Constitution and/or RLUIPA were the result of negligence or mistake. *See, e.g.*, *id.* at *6 (granting summary judgment where the alleged violation of plaintiff's rights was "the result of errant paper work and a miscommunication," which "resulted from, at most, negligence"); *Scott v. Shansiddeen*, No. 12-cv-84 (GLS/TWD), 2013 WL 3187071, at *4 (N.D.N.Y. June 20, 2013) (granting summary judgment where defendants' error did not "amount[] to anything more than negligence," which is "not actionable under the First Amendment" or "sufficient to support a claim under [RLUIPA]"). Plaintiff asserts that Defendant Williams "knew or should have known that the denial of religious services was a violation of [his] constitutional rights." *See* Pl. Opp'n ¶ 13. But this conclusory assertion, without more, is insufficient to sustain his claim on summary judgment. *See Tafari v. Annetts*, 363 F. App'x 80, 82 (2d Cir. 2010) ("[C]onclusory statements or mere allegations are not sufficient to defeat a summary judgment motion.") (quoting *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002)) (alterations omitted). Plaintiff has not set forth any evidence to show that Defendant Williams knowingly or intentionally prevented him from attending the November 10, 2017 Jumu'ah service. To the contrary, the record demonstrates that Plaintiff's absence may have been caused by a miscommunication or "an oversight during a facility-wide lockdown," *see* Def. Reply, Dkt. 50, at 2, or

13

both, but not by any intentional conduct on Defendant Williams' part.

In sum, Plaintiff's inability to attend one Jumu'ah service did not substantially burden his rights under the Constitution or RLUIPA and was, at most, the result of inactionable negligence. Accordingly, Defendant Williams is entitled to summary judgment.[10]

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Clerk of Court is respectfully directed to enter judgment in favor of Defendant Williams, terminate the motion pending at Dkt. 45, mail a copy of this Order to Plaintiff, and close this case.

SO ORDERED.

Dated:     May 15, 2020
           New York, New York

                                        Ronnie Abrams
                                        United States District Judge

---

[10] Because the Court concludes that Plaintiff's rights under the First Amendment and RLUIPA were not substantially burdened, the Court does not address Defendant's arguments as to exhaustion or qualified immunity at this time.